**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **RAY HULL and KAREN K. HULL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04 CV-721 C (C)** |
| | ) | |
| **BARON TELECOM, INC.,** | ) | |
| **WIRELESS SOLUTIONS, LLC, and** | ) | |
| **NEXTEL PARTNERS OPERATING CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT BARAN TELECOM, INC.'S TRIAL BRIEF

COMES NOW the Defendant Baran Telecom, Inc. ("Baran" or "Defendant"), and respectfully submits the following trial brief.

## STATEMENT OF THE CASE

Plaintiff Ray Hull was an employee of Innovative Wireless Construction, Inc. ("IWC"), a tower construction business located in Oklahoma.  In November of 2003, Hull was contacted by Baran to construct and erect one 3 leg, 350 foot self-supporting cellular phone tower in Fremont, Nebraska.  After discussing the project with Ryan Chapman, the owner of IWC, Hull agreed to perform the work.  Hull hired employees to assist him in constructing the tower, loaded his truck with his own personal tools and traveled to Nebraska.

Hull arrived in Nebraska and began constructing the tower with the assistance of crane operated by a separate crane company.  Hull and the crane operator erected the tower to 240 feet with the use of a hydraulic crane due to weather conditions, the crane operator would not finish the erection until conditions improved.  Hull advised Baran of the crane operator's decision and

further advised Baran that he would erect the remaining 110 feet with the use of a gin pole[1] and winch. Hull drove from Nebraska to Fredericksburg, Texas to pick up an IWC gin pole that was stored in another company's warehouse.

Upon arriving in Fredericksburg, Hull found the warehouse locked and was unable to retrieve the IWC gin pole. Hull contacted Baran and requested to borrow Baran's gin pole and winch. Baran agreed and Hull traveled to Baran's Houston, Texas office to pick up the gin pole and winch. When Hull arrived, Baran had two gin poles and winch systems set out. Hull inspected both gin poles and winch systems and determined which of the two he wanted to use. Hull loaded the chosen gin pole and winch onto his trailer and returned to Nebraska.

Upon returning to Nebraska, Hull once again inspected the gin pole and winch. He further made a test run using the gin pole as a safety precaution. Hull personally tied the gin pole to the already constructed portion of the tower and ascended the tower. Hull's crew then began hoisting a 20 foot leg and attached x-bracing with the use of the gin pole. Once the leg was hoisted, Hull climbed up the gin pole approximately 10 feet and secured himself to the gin pole using his positioning lanyard. While attempting to install the tower leg, the gin pole fell approximately 240 feet. Hull, being attached to the gin pole, fell with it. Hull brought the instant action against Baran claiming Baran owed him some duty during the operation of this project.

## ARGUMENT AND AUTHORITY

In order for Plaintiff to establish liability against Baran based on negligence, three essential elements must be met: "First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, failure of the defendant to perform that duty; and, third,

---

[1] A gin pole is a metal temporary "crane" that sticks up and above the existing portions of a tower. It is used to lift additional tower sections during the construction of a tower as a sort of pulley system.

injury to the plaintiff proximately resulting from such failure." Armstrong v. City of Tulsa, 226 P. 560 (Okla. 1924).  Duty is clearly the threshold question in any negligence action.  Haas v. Firestone Tire & Rubber Co., 563 P.2d 620, 625 (Okla. 1976).  In the absence of a duty, there can be no negligence.  Brown v. Alliance Real Estate Group, 976 P.2d 1043, 1044 (Okla. 1999). "The existence of a duty depends on the relationship between the parties and the general risks involved in the common undertaking."   Wofford v. Eastern State Hosp., 795 P.2d 516, 519 (Okla.1990).

In the instant case, it is undisputed that Ray Hull was an employee of Innovative Wireless Construction (IWC), an independent contractor retained by Baran for the specific purpose of constructing and erecting one 3 leg, 350 foot self-supporting cellular phone tower in Fremont, Nebraska.  It is well established that "one who engages an independent contractor to do work for him, and who does not himself undertake to interfere with or direct that work, is not obligated to protect the employees of the contractor from hazards which are incidental to or part of the very work which the independent contractor has been hired to perform."   Marshall v. Hale-Halsell Co., 932 P.2d 1117, 1119 (Okla. 1997).  See also Hatley v. Mobil Pipe Line Co., 512 P.2d 182 (Okla. 1973).

In Marshall v. Hale-Halsell Co., Marshall, an independent contractor, was hired by Hale-Halsell to unload cargo.  Plaintiff requested a manual pallet lift, but was given a motorized pallet lift instead.  Plaintiff was familiar with the operation of manual pallet lifts but was unfamiliar with motorized pallets.  In fact, Marshall requested instructions on how to use the motorized lift but was not given any.  After unloading approximately fifteen pallets with the motorized pallet lift, Plaintiff ran over his foot when he put it in reverse.  Marshall brought a negligence action

against Hale-Halsell based on the theory that it owed him a duty to provide instructions in the proper use of motorized pallet lifts.

The trial court granted summary judgment in favor of Hale-Halsell.  In affirming the trial court's ruling, the Supreme Court of Oklahoma stated because Hale-Halsell did not interfere with or direct the work of Marshall, Hale-Halsell was "not obligated to protect him from hazards which were incidental to or part of the very work he was hired by the independent contractor to perform." Id. at 1119.  The Court further found "the hazard of running over one's own foot to be incidental to and part of the work performed by Marshall." Id.

Marshall is similar to the instant case.  Like the Plaintiff in Marshall, Ray Hull was an employee of an independent contractor (IWC) who was injured during the performance of his job.  Like Marshall, Mr. Hull's job consisted of hazards which were incidental to, and part of, the very work he was hired to do.  It is undisputed that the risk of falling is a hazard incidental to constructing self-supporting towers.  Hull was aware when he arrived at the construction site that the potential existed for falls.  Hull has heard of others falling on tower construction projects. Thus, it is clear the hazard involved in constructing towers was a hazard incidental to, and part of, the very work Hull, through IWC, agreed to perform for Baran.  As such, Baran owed no duty to Hull.

Hull argues Baran owed him a duty of care because the gin pole used by him was owned by Baran.  Baran allowed Hull to borrow its gin pole because, according to Hull, he did not have access to IWC's gin pole.  The Marshall court determined that this did not create any special duty on the part of Defendant even when Plaintiff requested instruction and was unfamiliar with the tool's operation.  The instant case is even more tenuous than Marshall because Hull was experienced in the use of gin poles and did not need instruction regarding its use.

Moreover, despite Hull's suggestion to the contrary, Baran did not owe Hull a duty of care as a supplier of chattel. The Restatement (Second) of Torts, §392 (1965) provides that one who supplies another a chattel *to be used for business purposes* may, under certain conditions, be subject to liability to those who use the chattel and suffer physical harm as a result of such use. Comment e of the Restatement (Second) of Torts, §392 offers a definition of "business purpose." The comment states:

> One who employs another to erect a structure or to do other work, and agrees for that purpose to supply the necessary tools and temporary structures, supplies them to the employees of such other for a business purpose. This is true irrespective of whether the structure or work when finished is to be used for business or residential and social purposes. *On the other hand, if it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business purposes.* Comment e of the Restatement (Second) of Torts, §392 (emphasis added).

Hull borrowed Baran's gin pole and winch because he was unable to obtain IWC's gin pole. Baran permitted Hull to use its gin pole and winch as a favor. The gin pole and winch were supplied as a gratuity and not a business purpose as defined by Comment e of the Restatement (Second) of Torts, §392. Based upon the law recited by Plaintiff, Baran owed no duty to Hull as a supplier of chattel.

Hull next argues that Baran is negligent because it somehow coerced him into continuing working despite his and his crew's fatigue. Hull's expert, Richard Bell, supports this theory and opines that Hull and his crew were fatigued despite having no knowledge or understanding of how much sleep Hull and his crew obtained. As such, Mr. Bell's testimony in this regard should be excluded. Regardless, Plaintiff implies he was economically coerced into completing the construction project at issue despite his alleged fatigue because had he not completed the project on time, he would not receive additional work from Baran in the future. However, it is well

established that economic coercion or duress does not make an otherwise voluntary act involuntary. Economic duress is recognized only as an equitable doctrine in contract law. It is not an independent tort under Oklahoma law. *See Cimarron Pipeline Const., Inc. v. U.S. Fidelity & Guar. Ins. Co.*, 848 P.2d 1161 (Okla. 1993).

The case of *Demarest v. T.C. Bateson Construction Co.*, 370 F.2d 281 (10th Cir. 1967), is instructive. In *Demarest*, Plaintiff, an employee of a construction sheet metal subcontractor, brought suit against the prime contractor to recover damages for injuries he sustained in a fall at the worksite. While working on the roof of a building, Plaintiff fell through. He brought suit against the prime contractor for failing to provide a safe place to work. Defendant argued in part that Plaintiff had knowledge of the danger and therefore assumed the risk of same. In response, Plaintiff argued that he did not voluntary assume the risk; rather, he was "economically coerced into assuming it." The Court stated economic coercion has no bearing on the question of voluntariness in a non-master-servant situation. *Demarest*, 370 F.2d at 285. The Court further stated, "[i]n master-servant cases the general rule in this country seems always to have been that economic coercion does not make a servant's act involuntary." *Id.* Plaintiff's argument that he was somehow economically coerced into performing his job is not recognized by the Courts as making Mr. Hull's otherwise voluntary act involuntary.

Moreover, Hull admits he was the lead man for IWC and was the individual responsible for assessing the hazards on the job. Hull knew he was tired when he returned from Texas, but determined that he was not too tired to keep him from working. Further, no one ordered Hull up the tower; rather, Hull made the decision on his own to continue working despite being tired.

Finally, Baran asserts Hull was injured due to his own negligence. Specifically, Hull personally rigged the gin pole to the already constructed portions of the cell phone tower. In

doing so, Hull failed to secure the gin pole to the tower with the use of a shackle as a bottom choker and instead used a hook.  Moreover, Hull failed to use a mid-point bridle choker.  Hull's own expert agrees that the use of a shackle as a bottom choker and a mid-point bridle choker is a safer method of rigging than the method ultimately used by Hull.  Indeed, had Hull used a shackle instead of a hook, the gin pole would not have fallen to the ground.  As such, Baran asserts that Hull's own negligence caused the accident at issue and resulting injuries.

## <u>CONCLUSION</u>

It is undisputed that Hull was an employee of an independent contractor.  As such, Baran owed Hull no duty to protect Hull from the very work Hull was hired to perform.  No evidence has been presented to the contrary, and Defendant requests the Court grant demurrer in this regard.

Respectfully submitted,

s/Thomas A. Paruolo
ROBERT N. NELSON, OBA #6622
THOMAS A. PARUOLO, OBA #18442
WHITTEN, NELSON, MCGUIRE,
        TERRY & ROSELIUS
Suite 400, One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma   73102
Telephone:  (405) 239-2522
Facsimile:  (405) 239-2573
ATTORNEYS FOR DEFENDANT
BARAN TELECOM, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th of January, 2006, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Thomas J. McGeady
Donna L. Smith
J. Stephen Neas
LOGAN & LOWRY, LLP
101 South Wilson Street
P.O. Box 558
Vinita, OK  74301-0558

s/Thomas A. Paruolo