**FILED**
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

July 12, 2007

TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

---

RAY HULL; KAREN K. HULL,

    Plaintiffs-Appellants,

v.

BARAN TELECOM, INC,

    Defendant-Appellee.

No. 06-5136
(D.C. No. 04-CV-721-HDC-PJC)
(N. Dist. Okla.)

**FILED**

AUG – 6 2007

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Teste
Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit
By _____
Deputy Clerk

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

This negligence action was filed against Baran Telecom, Inc., the general contractor on a cellular telephone tower construction project, after Plaintiff, the foreman for the subcontractor tower erection crew, fell 240 feet when a cable used to hoist tower sections snapped. The district court awarded summary judgment in favor of Baran Telecom, and this appeal followed.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND[1]

Plaintiff Ray Hull, an experienced tower construction specialist, accepted a position with Innovative Wireless Construction ("IWC") in an effort to resurrect its failing cellular telephone tower construction business. Mr. Hull's first job with IWC was the time-sensitive construction of a three-leg, 350-foot, self-supporting cellular telephone tower in Fremont, Nebraska for Baran Telecom after Baran's original subcontractor defaulted.

According to the undisputed material facts, IWC accepted the job on the express condition that Baran Telecom would provide a hydraulic crane and crane operators to assist IWC with the hoisting of pre-assembled tower sections into position. Mr. Hull and his crew immediately began assembly of the tower sections and, using the crane supplied by Baran Telecom, erected the tower to a height of 240 feet before the crane operator refused to continue working due to windy conditions. The next morning the crane operator disassembled his crane and left the work site over Baran Telecom's on-site representative's objections because the crane was scheduled for another job.

IWC and Baran agree that, because Baran Telecom could not secure another crane, the job could only be completed on time with the use of a gin pole and

---

[1] We recount only those facts relevant to the issues before us, construing them in the light most favorable Mr. Hull, the non-movant.

hoist.[2] Although IWC offered the use of its gin pole and hoist at additional cost, Mr. Hull was unable to retrieve it from its off-site location. Baran Telecom, concerned over meeting the project deadline, secured the use of one of its gin poles and hoists, which Mr. Hull retrieved and brought to the construction site.

Mr. Hull and his crew inspected the gin pole and hoist system, erected it, and tested its operation. Mr. Hull then ascended the tower and secured his safety rigging to the gin pole in preparation for the first hoist. Shortly after they began the first hoist, however, the cable snapped under only seventeen percent of its maximum load-bearing capability. This failure caused the gin pole, and Mr. Hull along with it, to fall some 240 feet to the ground. Mr. Hull's safety cable attempted to arrest his fall after 200 feet, but snapped under the pressure, causing him to free fall the last 40 feet.

Mr. Hull and his wife sued Baran Telecom for negligence under Nebraska law[3], alleging Baran Telecom owed him a duty of care as the general contractor and site supervisor as well as the supplier of chattel. Baran Telecom moved for summary judgment, which the district court granted in part and denied in part.

---

[2] A gin pole and hoist consists of a mast, pulley and tackle assembly, and either hand- or machine-powered hoist. The mast, or gin pole, is attached to the tower with various clasp assemblies but protrudes above its highest section. New tower sections are then attached to the cables, or tackle, and hoisted into position and attached. The gin pole is then slid further up the tower and the process repeated.

[3] The parties agree that Nebraska law controls.

The district court granted Baran Telecom summary judgment with respect to the supplier of chattel claim after concluding that Baran Telecom offered its gin pole and hoist only as a favor. But genuine issues of material fact concerning the precise nature of Baran Telecom's supervision prevented the district court from awarding Baran Telecom summary judgment on the supervisor claim.

Baran Telecom moved for summary judgment a second time on the supervisor claim after submitting newly obtained testimony. That testimony came from Baran Telecom's on-site representative, an employee of a company to which Baran Telecom frequently subcontracted non-tower-related construction such as fencing and ground work. The representative testified that as Baran Telecom's liaison he merely observed and reported on IWC's progress. The district court found this evidence persuasive enough to award Baran Telecom summary judgment on that remaining issue. Plaintiffs' appeal challenges both awards of summary judgment.

## ANALYSIS

### A. Standard of Review

We review summary judgment decisions *de novo*, taking the evidence in the light most favorable to the non-moving party, in this case, Mr. Hull's favor. *See Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1164 (10th Cir. 2007) (en banc). Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**B.     Duty Owed by a General Contractor**

A general contractor's duty of care under Nebraska law is set forth in *Parrish v. Omaha Public Power District*, 496 N.W.2d 902 (Neb. 1993). That case, which distinguished between the duties of care owed by premise owners versus general contractors in control of the premises, stated that general contractors owe a duty of care to those lawfully on the premises "to keep the premises in a reasonably safe condition while the contract is in the course of performance." *Id.* at 911 (quotation omitted). Under *Parrish*,

> to impose liability on a general contractor for injury to a subcontractor's employee, the general contractor must have (1) supervised the work that caused the injury to the employee; (2) had actual or constructive knowledge of the danger which ultimately caused the injury; and (3) had the opportunity to prevent the injury, but negligently failed to prevent the injury.

*Id.* at 912. "'Normally when a general contractor has a supervisor on the site, it will be able to exercise control over the premises.'" *Id.* at 911 (quoting *Farris v. Gen. Growth Dev. Corp.*, 354 N.W.2d 251, 254 (Iowa Ct. App. 1984)). However, "[i]t is not enough that [the general contractor] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to

prescribe alterations and deviations." Restatement (Second) of Torts § 414, cmt. c.

The district court analyzed Plaintiffs' factual assertions that Baran Telecom's on-site liaison supervised IWC's work, but rejected those assertions as insufficient proof that Baran Telecom "controlled the manner and details of Hull's work." (Aplts.' App., v. 2, at 604 (Order at 8 [hereinafter Order II]).)

Plaintiff argues that the district court applied the wrong law when it cited *Didier v. Ash Grove Cement Co.*, No. A-03-924, 2005 Neb. App. Lexis 226, at *19-20 (Neb. Ct. App. Sept. 20, 2005), *rev'd on other grounds*, 718 N.W.2d 484 (Neb. 2006), in its general statement of negligence law for the proposition that "[a] passive observer-representative of the defendant does not constitute supervision." (Aplts.' App., v. 2, at 602 (Order II at 6).) Specifically, Plaintiff contends that because *Didier* dealt with the duties of site owners as opposed to general contractors, it assessed Plaintiff's claim under the wrong standard. We disagree.

The district court expressly stated in its first summary judgment decision that while *Parrish* explained the distinction between site owners and general contractors, only the latter applied to Mr. Hull's claims. In its second summary judgment decision, the district court repeated *Parrish*'s command that general contractors owe a duty of care to subcontractors when exercising supervisory control. It only cited *Didier* to provide an example of actions incapable of

amounting to "supervision." We do not believe that the district court's reliance on *Didier* in order to illustrate the nature of "supervision" is incorrect.

Additionally, Plaintiffs have presented no facts indicating that Baran Telecom's on-site representative did anything more than occasionally communicate IWC's progress to Baran Telecom or that Baran Telecom in any way attempted to control Mr. Hull's actions short of urging his timely completion of the construction. *Cf. Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991) (relying on North Dakota Supreme Court decision addressing amount of retained or exercised control necessary to invoke Restatement § 414, which held that "[a]n employer who does not retain or actually exercise any control over a project of the employees of an independent contractor, but, instead, is concerned primarily only with the finished product should not be held liable for the negligence of the independent contractor or its employees," *Madler v. McKenzie Cty.*, 467 N.W.2d 709, 712 (N.D. 1991) (quotation omitted)). Plaintiffs' assertions that such supervision is sufficient to impose a duty of care on a general contractor are contrary to the law.

Thus, the district court's grant of summary judgment in favor of Baran Telecom on this issue is **AFFIRMED.**

### C.  Duty Owed by a Supplier of a Defective Chattel

Under Nebraska law, the supplier of a defective chattel may be held liable

for negligence in certain circumstances. In *Semler v. Sears, Roebuck & Co.*, 689 N.W.2d 327 (Neb. 2004), the Nebraska Supreme Court adopted the negligence standard provided by the Restatement (Second) of Torts § 392:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Id.* at 864-65 (quoting Restatement (Second) of Torts § 392). When supplying tools to another party's employees,

> [o]ne who employs another to erect a structure or to do other work, and agrees for that purpose to supply the necessary tools and temporary structures, supplies them to the employees of such other for a business purpose. . . . On the other hand, if it is understood that the person who is to do the work is to supply his own instrumentalities, but the person for whom the work is to be done permits his own tools or appliances to be used as a favor to the person doing the work, the tools and appliances are supplied as a gratuity and not for use for the supplier's business purposes.

*Id.* (quoting Restatement (Second) of Torts § 392, cmt. e).

The district court determined that no duty of care arose when Baran Telecom supplied the gin pole and hoist because Baran Telecom allowed IWC to use the gin pole and hoist "as a favor." (Aplts.' App., v. 2, at 342 (Order at 9

[hereinafter Order I]).) The district court rejected Plaintiffs' contention that because of the project's rapidly approaching deadline, Baran Telecom's lending of the equipment served its business purposes. Rather, the district court stated: "Hull does not provide any evidence by pointing to the contract between Baran and IWC or otherwise that there was any understanding other than that IWC was responsible for furnishing its own tools." (*Id.* at 341 (Order I at 8).)

This conclusion, however, ignores both the inclusion of the "or otherwise" phrase as well as the undisputed facts of the case. According to the district court, it is an undisputed material fact that "Hull accepted the contract on behalf of IWC, *on the express condition* that a large crane would be available." (*Id.* at 334 (Order *I* at 1) (emphasis added).) Indeed, Baran Telecom conceded the existence of this condition at oral argument. (Oral Arg. at 21:33-37.) Despite this concession, Baran Telecom attempts to argue that because the construction contract stated that IWC would provide its own tools, Baran Telecom was under no obligation to supply either the crane or the gin pole and hoist. Baran Telecom's acknowledgment of IWC's conditional acceptance, however, prevents it from arguing to the contrary now.

This undisputed condition establishes that Baran Telecom was obligated to supply a crane in order to permit IWC to complete the project on time. The undisputed facts indicate that Baran Telecom, through its on-site representative, booked the crane for only one day and failed to persuade the crane operator to

remain on-site. When the crane operator dismantled his crane and left due to prior commitments, Baran Telecom was obligated to supply a suitable replacement. The duty to supply safe equipment did not leave the job site with the hydraulic crane. Accordingly, we **REVERSE** the district court's award of summary judgment in favor of Baran Telecom on this issue, and **REMAND** to the district court for further proceedings consistent with this opinion.

                                           Entered for the Court


                                           Monroe G. McKay
                                           Circuit Judge

**United States Court of Appeals for the Tenth Circuit**
OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Elisabeth A. Shumaker
Clerk of Court

Douglas E. Cressler
Chief Deputy Clerk

RECEIVED

AUG - 6 2007

Phil Lombardi, Clerk
U.S. DISTRICT COURT

August 3, 2007

Mr. Phil Lombardi
Clerk
United States District Court for the N. District of Oklahoma
333 W. Fourth Street
Room 411 United States Courthouse
Tulsa, OK 74103

      Re:    06-5136, Hull v. Baran Telecom, Inc.
            Dist/Ag docket: 04-CV-721-HDC-PJC

Dear Clerk:

    Enclosed for the clerk of the trial court or the named agency, is a certified copy of the order and judgment filed in this case which is issued as the mandate of this court.  See Fed. R. App. P. 41(a). Please file it in the records of your court or agency.

    Please contact this office if you have questions.

                                                Sincerely,

                                               Elisabeth A. Shumaker
                                               Clerk, Court of Appeals

                                          By:
                                                 Deputy Clerk

clk:jc

cc:
    Donna Louise Smith
    Thomas J. McGeady
    Ryan Patrick Langston
    Ryan Patrick Langston
    Robert W. Nelson
    Thomas Andrew Paruolo
    James Edward Poe